# UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF TENNESSEE
## GREENEVILLE DIVISION

BALLAD HEALTH, et al.,

          Plaintiffs,

   vs.

UNITEDHEALTH GROUP
INCORPORATED, et al.,

          Defendants.

No. 2:25-CV-176-DCLC-CRW

# BRIEF IN SUPPORT OF MOTION TO COMPEL
## ARBITRATION, OR ALTERNATIVELY, TO DISMISS THE COMPLAINT FOR
## LACK OF PERSONAL JURISDICTION AND FAILURE TO STATE A CLAIM

## TABLE OF CONTENTS

INTRODUCTION ................................................................................................................ 1

BACKGROUND ................................................................................................................. 2

LEGAL STANDARD.......................................................................................................... 5

ARGUMENT ...................................................................................................................... 6

I.      BALLAD HEALTH'S CLAIMS ARE SUBJECT TO BINDING ARBITRATION. ................... 7

      A.      Ballad Health and UHIC agreed to arbitrate "███████████." ................................ 7

      B.      The agreements between Ballad Health and UHIC are not "contracts of adhesion." ......... 8

      C.      Public policy favors arbitration. ........................................................................ 8

II.     ALL CLAIMS MUST BE DISMISSED AS TO UHG. ...................................................... 9

      A.      The Court lacks personal jurisdiction over UHG. ............................................. 9

           1.      UHG is not subject to general jurisdiction in Tennessee. ....................... 10

           2.      UHG is not subject to specific jurisdiction in Tennessee. ...................... 10

      B.      The Court should also dismiss UHG because it is named only in its capacity as UHIC's parent. ............................................................................................ 11

III.    THE MEDICARE ACT PREEMPTS BALLAD HEALTH'S CLAIMS. ................................ 12

IV.     THE COMPLAINT ALSO FAILS THE APPLICABLE PLEADING STANDARDS............... 14

      A.      The breach-of-contract claims (Counts II, III, & IV) fail on their face............... 14

      B.      Count VI should be dismissed because Tennessee does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing. ......... 15

      C.      Count V fails because Ballad Health has not pleaded fraud with 9(b) particularity......... 16

CONCLUSION .................................................................................................................. 16

i

# TABLE OF AUTHORITIES

**Page(s)**

CASES

*Arthur Andersen LLP v. Carlisle,*
    556 U.S. 624 (2009) ................................................................................................ 1

*Ashcroft v. Iqbal,*
    556 U.S. 662 (2009) ...........................................................................................6, 15

*Assocs., Inc., v. Casarotto,*
    517 U.S. 681 (1996) ............................................................................................... 6

*AT&T Mobility LLC v. Concepcion,*
    563 U.S. 333 (2011) ........................................................................................... 1, 7

*Aylward v. SelectHealth, Inc.,*
    35 F.4th 673 (9th Cir. 2022) .....................................................................2, 13, 14

*Baugh v. Novak,*
    340 S.W.3d 372 (Tenn. 2011) ................................................................................ 9

*Bell Atl. Corp. v. Twombly,*
    550 U.S. 544 (2007) ............................................................................................... 6

*Boyle v. Anderson,*
    871 S.E.2d 226 (Va. 2022) ..................................................................................... 9

*Bristol-Myers Squibb Co. v. Superior Ct.,*
    582 U.S. 255 (2017) ............................................................................................. 10

*Buckeye Check Cashing, Inc.* v. *Cardegna,*
    546 U.S. 440 (2006) .........................................................................................1, 5, 9

*Buraczynski v. Eyring,*
    919 S.W.2d 314 (Tenn. 1996) ................................................................................ 8

*Cadence Bank, N.A. v. Alpha Tr.,*
    473 S.W.3d 756 (Tenn. Ct. App. 2015) ............................................................... 15

*Canaday v. Anthem Cos.,*
    9 F.4th 392 (6th Cir. 2021) .................................................................................. 11

*Cataldo v. United States Steel Corp.,*
    676 F.3d 542 (6th Cir. 2012) ............................................................................... 16

*CompuCredit Corp. v. Greenwood,*
    565 U.S. 95 (2012) ................................................................................................. 1

*Cooper v. MRM Inv. Co.*,
   367 F.3d 493 (6th Cir. 2004) ........................................................................................... 8

*Daimler AG v. Bauman*,
   571 U.S. 117 (2014) ...................................................................................................... 10

*Dean Witter Reynolds, Inc. v. Byrd*,
   470 U.S. 213 (1985) ........................................................................................................ 2

*Do Sung Uhm v. Humana, Inc.*,
   620 F.3d 1134 (9th Cir. 2010) ............................................................................... 12, 13, 14

*Epic Sys. Corp. v. Lewis*,
   584 U.S. 497 (2018) ........................................................................................................ 1

*GE v. G. Siempelkamp GmbH & Co.*,
   29 F.3d 1095 (6th Cir. 1994) ........................................................................................... 8

*Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade*,
   404 S.W.3d 464 (Tenn. 2013) ......................................................................................... 9

*Goodyear Dunlop Tires Operations, S.A. v. Brown*,
   564 U.S. 915 (2011) ................................................................................................. 10, 11

*Gordon v. Greenview Hosp., Inc.*,
   300 S.W.3d 635 (Tenn. 2009) ....................................................................................... 12

*Green Tree Fin. Corp.-Ala. v. Randolph*,
   531 U.S. 79 (2000) ......................................................................................................... 6

*Greer v. Strange Honey Farm, LLC*,
   114 F.4th 605 (6th Cir. 2024) ..................................................................................... 6, 16

*Haley v. Bank of Am., N.A.*,
   2019 WL 13159817 (E.D. Tenn. July 10, 2019) ......................................................... 15, 16

*Hall St. Assocs., LLC v. Mattel, Inc.*,
   552 U.S. 576 (2008) ....................................................................................................... 2

*Handy-Clay v. City of Memphis*,
   695 F.3d 531 (6th Cir. 2012) ........................................................................................... 6

*Huffman v. Hilltop Cos., LLC*,
   747 F.3d 391 (6th Cir. 2014) ........................................................................................... 2

*In re EpiPen Direct Purchaser Litig.*,
   No. 20-cv-0827, 2022 WL 1017770 (D. Minn. Apr. 5, 2022) ........................................... 12

*Jernigan v. RSS/Manchester Operations, LLC*,
   No. 4:22-cv-00053-DCLC-CHS, 2023 WL 6053059 (E.D. Tenn. Sep. 15, 2023) ................. 7

iii

*Jones v. Waffle House, Inc.*,
   866 F.3d 1257 (11th Cir. 2017) ................................................................ 8

*Maryland v. Louisiana*,
   451 U.S. 725 (1981) .......................................................................... 12

*McGee v. Armstrong*,
   941 F.3d 859 (6th Cir. 2019) ................................................................ 8

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) ........................................................................... 1, 6

*Phillips v. Kaiser Found. Health Plan, Inc.*,
   953 F. Supp. 2d 1078 (N.D. Cal. 2011) ................................................ 13

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) .......................................................................... 1, 5

*Roberts v. United Healthcare Servs., Inc.*,
   206 Cal. Rptr. 3d 158 (Cal. Ct. App. 2016) .......................................... 13

*Sanderson v. HCA*,
   447 F.3d 873 (6th Cir. 2006) .............................................................. 16

*Seawright v. Am. Gen. Fin., Inc.*,
   507 F.3d 967 (6th Cir. 2007) ............................................................... 8

*Slowik v. Lambert*,
   529 F. Supp. 3d 756 (E.D. Tenn. 2021) ................................................ 6

*United States v. Bestfoods*,
   524 U.S. 51 (1998) ...................................................................... 11, 12

*Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*,
   489 U.S. 468 (1989) .......................................................................... 1

*Walden v. Fiore*,
   571 U.S. 277 (2014) ...................................................................... 2, 10

*Williams v. Aetna Better Health of Ohio*,
   No. 2:23-cv-2985, 2024 WL 3925879 (S.D. Ohio Aug. 22, 2024) ......... 13, 14

*Williams v. Allegheny County*,
   2023 WL 4238892 (W.D. Pa. June 28, 2023) ....................................... 13

## RULES

Federal Rule of Civil Procedure 9(b) .............................................. 6, 14, 16

Federal Rule of Civil Procedure 12(b)(6) ............................................. 6

Case 2:25-cv-00176-DCLC-CRW    Document 25-1    Filed 12/04/25    Page 5 of 24
PageID #: 526

S<span>TATUTES</span>

9 U.S.C. § 2 ............................................................................................................... 5

42 U.S.C. § 1395w-26(b)(3) ...................................................................................... 12

42 U.S.C. § 1395y(a)(1)(A) ....................................................................................... 13

Tenn. Code § 20-2-225(2)........................................................................................... 10

Tenn. Code §§ 29-5-301 *et seq.* ................................................................................. 9

Va. Code § 8.01-581.01 *et seq.* .................................................................................. 9

O<span>THER</span> A<span>UTHORITIES</span>

42 C.F.R § 422.100....................................................................................................13, 14

42 C.F.R § 422.101....................................................................................................13, 14

42 C.F.R § 422.102....................................................................................................13, 14

42 C.F.R. § 422.402 .................................................................................................... 12

42 C.F.R. § 422.578 .................................................................................................... 13

42 C.F.R. § 422.582 .................................................................................................... 13

42 C.F.R. § 422.590 .................................................................................................... 13

42 C.F.R § 423.104 ..................................................................................................... 14

Am. Arb. Ass'n, *Commerical Arbitration Rules & Mediation Procedures* R-7(a) (2022) ......................... 4

U.S. C<span>ONST.</span> A<span>RT.</span> VI, cl. 2 ............................................................................................ 12

U<span>NITED</span>H<span>EALTH</span> G<span>ROUP</span> I<span>NCORPORATED,</span> F<span>ISCAL</span> Y<span>EAR</span> 2024 10-K 20 (2025),
    https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2024/UNH-Q4-2024-
    Form-10-K.pdf ....................................................................................................... 11

v

## INTRODUCTION

Ballad Health knows that it and its affiliated hospitals must arbitrate any dispute with UnitedHealthcare Insurance Company (UHIC) and UnitedHealth Group Incorporated; they acknowledge those arbitration agreements in their Complaint—agreements that the sophisticated-business parties negotiated at arm's length and that require them to arbitrate "█████████." But Ballad Health argues that those agreements violate public policy because arbitration lacks "transparency." Compl. ¶ 108.

What Ballad Health meant is that arbitration lacks "publicity." We are here, not because Ballad Health has a good-faith basis for challenging the arbitration agreements themselves or arbitration as a method for resolving disputes, but because it wanted to publicize its dispute with UHIC. The Complaint reads like a compendium of recent news coverage about United and includes pages of news clippings unrelated to Ballad Health's relationship with UHIC or this litigation. This litigation is a PR stunt—not a legitimate challenge to arbitration.

In any event, Congress does not share Ballad Health's feigned concerns about arbitration. Through the Federal Arbitration Act (FAA), Congress has established a "liberal federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24 (1983). Consistent with that policy, "courts must place arbitration agreements on an equal footing with other contracts and enforce them according to their terms." *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 339 (2011) (citing *Buckeye Check Cashing, Inc.* v. *Cardegna*, 546 U.S. 440, 443 (2006) and *Volt Info. Scis., Inc. v. Bd. of Trs. of Leland Stanford Junior Univ.*, 489 U.S. 468, 478 (1989)); *see also Epic Sys. Corp. v. Lewis*, 584 U.S. 497, 505–06 (2018) (similar); *CompuCredit Corp. v. Greenwood*, 565 U.S. 95, 98 (2012) (similar); *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010) (similar); *Arthur Andersen LLP v. Carlisle*, 556 U.S. 624, 630

(2009) (similar); *Hall St. Assocs., LLC v. Mattel, Inc.*, 552 U.S. 576, 581 (2008) (similar); *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 220–21 (1985) (similar); *Huffman v. Hilltop Cos., LLC*, 747 F.3d 391, 394 (6th Cir. 2014) (describing "the strong federal policy in favor of arbitration"). There is no basis for Ballad Health's challenge to the arbitration agreements or to arbitration itself.

Which brings us to the nub of it: In the face of contracts requiring Ballad Health and its affiliated hospitals to arbitrate disputes with UHIC, Ballad Health and the hospitals filed a lawsuit. That was improper. This Court should dismiss the Complaint in favor of arbitration.

But if it doesn't, there are many other problems with the Complaint. To begin, this Court lacks personal jurisdiction over UHG because there are no factual allegations establishing that the company has suit-related contacts creating a substantial connection with Tennessee. *See Walden v. Fiore*, 571 U.S. 277, 284 (2014) ("For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State."). Beyond that, the Medicare Act preempts Ballad Health's claims, which in one way or another challenge UHIC's coverage determinations under Medicare. *See Aylward v. SelectHealth, Inc.*, 35 F.4th 673, 681 (9th Cir. 2022) ("Part C's preemption provision preempts a state law cause of action that parallels, enforces, or supplements express standards under Part C and its implementing regulation[s]"). And even beyond that, the claims fail because of various pleading defects.

But this Court need not reach those issues because this case belongs in arbitration (if anywhere).

## BACKGROUND

Ballad Health formed through the combination of Mountain States Health Alliance (MSHA) and Wellmont Health, regional health systems in East Tennessee and Southwest Virginia.

2

Compl. ¶ 3. Before the merger, MSHA and Wellmont Health entered into Facility Participation Agreements with UHIC. *See* Ex. 1 (2010 MSHA Agreement with relevant amendments); Ex. 2 (2014 Wellmont Health Agreement with relevant amendments). Following the merger, the parties amended the agreements and continued to be bound by them. *See* Ex. 1 at 20; Ex. 2 at 27. Ballad Health concedes that those contracts are binding on it and its affiliated plaintiff hospitals. *See, e.g.*, ECF No. 3 ¶¶ 1–2.

Both contracts contain the following arbitration provision:



████████████████████████████████████████████████
████████████████████████████████████

████████████████████████████████████████████████
████████████████████

████████████████████████████████████████████████
████████████████████████████████████████████████
████████████████████████████████████████████

████████████████████████████████████████████████
████████

████████████████████████████████████████████████

*See* Ex. 1 at 10–11; Ex. 2 at 30–31.



████████████████████████████████████████████████

████████████████████████████████████████████████

████████████████████████████████████████████████

██████████████████████████████ *See* Ex. 1 at 10; Ex. 2 at 30. ██████

████████████████████████████████████████████████

██████████████████████ *See* Ex. 1 at 10; Ex. 2 at 30.[1]

████████████████████████████████████████████████

---

[1] The AAA Rules also leave for the arbitrator all questions of arbitrability. Am. Arb. Ass'n, *Commerical Arbitration Rules & Mediation Procedures* R-7(a) (2022) ("The arbitrator shall have the power to rule on his or her own jurisdiction, including any objections with respect to . . . the arbitrability of any claim or counterclaim[.]").

██████████████████████████████████████

██████████████ Instead of submitting any dispute to binding arbitration as the contracts require, Ballad Health flouted those contractual provisions to file this lawsuit.

The Complaint confirms why: Ballad Health wanted the publicity that comes with a lawsuit but not a confidential arbitration. That is why the Complaint contains pages of allegations regurgitating news stories from across the country—most of which have nothing to do with Ballad Health's relationship with UHIC or what the United defendants discern to be Ballad Health's claim against them.

Setting aside all those irrelevant allegations, what remains is Ballad Health's threadbare claim—backed only by labels and conclusions—that UHIC perpetrated "schemes" to "abuse" Medicare Advantage. Compl. ¶¶ 26, 32. Ballad Health draws on several misinformation-filled "news" articles smearing the United defendants and affiliates for allegedly "grossly delay[ed] and underpa[id] medical providers." *Id.* ¶¶ 37, 53–60, 62–68, 70–75.[2]

## **LEGAL STANDARD**

The FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing v. Cardegna*, 546 U.S. 440, 443 (2006). Under the FAA, arbitration agreements "shall be valid, irrevocable and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. That congressional mandate "reflects the fundamental principle that arbitration is a matter of contract." *Rent-A-Center, W., Inc. v. Jackson*, 561 U.S. 63, 67 (2010). And when the contract requires arbitration, a federal court should move the dispute "out of court and into arbitration as quickly and easily as possible." *Moses H. Cone*, 460 U.S. at 22.

---

[2] Ballad asserts the following claims: Count I (Declaratory Judgment); Count II (Breach-of-Contract for excessive medical necessity denials); Count III (Breach-of-Contract for untimely appeal responses); Count IV (Breach-of-Contract for bed day payments); Count V (Fraud); and Count VI (Breach of Duty of Good Faith and Fair Dealing). *See* Compl. ¶¶ 105–43.

State law governs whether a valid arbitration provision exists or whether any "generally applicable contract defenses" apply. *Dr.'s Assocs., Inc., v. Casarotto*, 517 U.S. 681, 686–87 (1996). "The party resisting arbitration bears the burden of proving that the claims at issue are unsuitable for arbitration." *Green Tree Fin. Corp.-Ala. v. Randolph,* 531 U.S. 79, 91 (2000).

Under Rule 12(b)(6), a complaint must state a "plausible" claim for relief. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). A court "need not accept as true a legal conclusion couched as a factual allegation, or an unwarranted factual inference." *Handy-Clay v. City of Memphis*, 695 F.3d 531, 539 (6th Cir. 2012); *see also Slowik v. Lambert*, 529 F. Supp. 3d 756, 761–62 (E.D. Tenn. 2021) (Corker, J.). And under Rule 9(b), a plaintiff must plead fraud-based claims "with particularity." *See* Fed. R. Civ. P. 9(b). "General allegations that raise the mere possibility of fraud will not do." *Greer v. Strange Honey Farm, LLC*, 114 F.4th 605, 615 (6th Cir. 2024) (cleaned up).

## **ARGUMENT**

This case has no business in court.

*First*, the Court should compel arbitration because the parties have agreed to arbitrate "█ █████████." *See* Exs. 1 at 10 & 2 at 30. Those agreements are not "contracts of adhesion"; multibillion-dollar healthcare providers like Ballad Health represented by sophisticated counsel do not enter contracts against their will. And Ballad Health's argument that the arbitration provisions are "contrary to public policy" because arbitration lacks "transparency" is frivolous. *See* Compl. ¶¶ 98–99. The FAA is *the* federal public policy on arbitration, and it favors arbitration.

*Second*, all claims must be dismissed as to UHG. The Court lacks personal jurisdiction over UHG. It is not at home in Tennessee, and there are no plausible factual allegations establishing that UHG has suit-related contacts creating a substantial connection with the State.

6

*Third*, Ballad Health's claims fail on the pleadings. The Medicare Act preempts all Ballad Health's claims because they all represent an effort to regulate UHIC's coverage determinations under and administration of Medicare plans. And on top of that, the claims fail the applicable pleading standards.

## I.     BALLAD HEALTH'S CLAIMS ARE SUBJECT TO BINDING ARBITRATION.

Consistent with the FAA, a court should compel arbitration when the parties have agreed to arbitrate. *See Concepcion*, 563 U.S. at 339. In its Complaint, Ballad Health concedes that it and the rest of its plaintiff affiliates are bound by the contracts with UHIC. *See* Compl. ¶ 77–78, 86–88, 96–97, 124–25, 129–30, 135–36, 142–43; *see also* ECF No. 3 ¶¶ 1–2. And those contracts require the parties to resolve "███████████████" by binding arbitration, ███████████████ ███████████████████████. *See* Ex. 1 at 10; Ex. 2 at 30. Accordingly, the Court should dismiss the Complaint in favor of arbitration.

### A.     Ballad Health and UHIC agreed to arbitrate "███████████████"

The parties' contracts require them to resolve "███████████████" by binding arbitration, ██████████████████████████████████████████████████████████ ███████████████ Ex. 1 at 10; Ex. 2 at 30. Ballad Health and its affiliates concede as much (ECF No. 3 ¶¶ 1–2), so that should be the end of the matter: ███████████ means any and all, so all of plaintiffs' claims are subject to binding arbitration. *See, e.g. Jernigan v. RSS/Manchester Operations, LLC*, No. 4:22-cv-00053-DCLC-CHS, 2023 WL 6053059 at *2–4 (E.D. Tenn. Sep. 15, 2023) (Corker, J.) (compelling arbitration because arbitration agreement applied to "any and all claims"); *see also McGee v. Armstrong*, 941 F.3d 859, 866 (6th Cir. 2019) (arbitration provision subjecting "[a]ny dispute" to arbitration under AAA employment rules "clearly and unmistakably" delegated "questions of arbitrability"); *GE v. G. Siempelkamp GmbH & Co.*, 29 F.3d 1095, 1099 (6th Cir. 1994) ("all disputes" means all disputes); *Jones v. Waffle*

7

*House, Inc.*, 866 F.3d 1257, 1267 (11th Cir. 2017) ("[a]ny disputes means all disputes, because 'any' means all" (collecting cases)).

### B.     The agreements between Ballad Health and UHIC are not "contracts of adhesion."

Ballad Health cannot escape the contracts' language, so it tries to nuke the language instead. It argues that the arbitration provisions "constitute unlawful contracts of adhesion." Compl. ¶ 99.

One can only appreciate the irony in Ballad Health's embracing the parties' contracts to claim that UHIC breached them while challenging the arbitration provisions—and only the arbitration provisions—in those same contracts. But it should go without saying that agreements between large, sophisticated companies like Ballad Health and UHIC are not contracts of adhesion in any sense. *See Seawright v. Am. Gen. Fin., Inc.*, 507 F.3d 967, 976 (6th Cir. 2007) (an adhesion contract requires that "'the absence of a meaningful choice for the party occupying the weaker bargaining position' must also be present" (quoting *Cooper v. MRM Inv. Co.*, 367 F.3d 493, 501–02 (6th Cir. 2004))); *Buraczynski v. Eyring*, 919 S.W.2d 314, 320 (Tenn. 1996) ("[T]he distinctive feature of a contract of adhesion is that the weaker party has no realistic choice as to its terms.").

### C.     Public policy favors arbitration.

Ballad Health's last argument is no better. It asks this Court to declare the arbitration agreements invalid as against public policy because confidential arbitrations prevent "transparency" in disputes involving Medicare benefits. Compl. ¶ 108. There is no support for that argument. None.

On the contrary, and as explained above, the FAA "embodies the national policy favoring arbitration." *Buckeye Check Cashing*, 546 U.S. at 443. Likewise, Tennessee and Virginia have both adopted the Uniform Arbitration Act, *see* Tenn. Code §§ 29-5-301 *et seq.*; Va. Code § 8.01-

8

581.01 *et seq.*, under which arbitration provisions are "valid, enforceable, and irrevocable." Arbitration agreements are "favored in Tennessee by both statute and case law," *Glassman, Edwards, Wyatt, Tuttle & Cox, P.C. v. Wade*, 404 S.W.3d 464, 466 (Tenn. 2013), and Virginia "require[s] arbitration for contracts" and "compels arbitration for written agreements to submit a dispute to arbitration." *Boyle v. Anderson*, 871 S.E.2d 226, 227 (Va. 2022). And those policies favoring arbitration operate on top of the States' general aversion to invalidating contract provisions. *See, e.g.*, *Baugh v. Novak*, 340 S.W.3d 372, 383 (Tenn. 2011) (Tennessee courts must exercise "judicial restraint" in considering public-policy challenges to contract provisions and should not invalidate a contract provision unless its illegality is "clearly established," among other requirements).

The Tennessee and Virginia General Assemblies have reached the same conclusion as Congress: arbitration benefits the public.

\* \* \* \*

The bottom line: The Agreements require Ballad Health to arbitrate "███████████████" with United. This Court should dismiss the case in favor of arbitration.

## II.     ALL CLAIMS MUST BE DISMISSED AS TO UHG.

This Court should not move beyond the arbitration agreements. But if it did, the Court should dismiss UHG for multiple reasons.

### A.     The Court lacks personal jurisdiction over UHG.

The court should dismiss the Complaint because it lacks personal jurisdiction—either general jurisdiction or specific jurisdiction—over UHG.[3]

---

[3] Ballad Health doesn't specify which prong of Tennessee's long-arm statute it claims supplies jurisdiction. Compl. ¶ 29. But at its broadest, Tennessee's long-arm statute authorizes courts to exercise personal jurisdiction "on any basis not inconsistent with the Constitution . . . of the United States." Tenn. Code § 20-2-225(2). So, for this motion, UHG will focus on the constitutional

9

### 1. UHG is not subject to general jurisdiction in Tennessee.

General jurisdiction allows a court to hear "any and all claims" against a defendant when the defendant's contacts within a state "are so 'continuous and systematic' as to render them essentially at home in the forum State." *Goodyear Dunlop Tires Operations, S.A. v. Brown*, 564 U.S. 915, 919 (2011). Absent exceptional circumstances, a company's "place of incorporation and principal place of business" are the only places where the company is at home. *Daimler AG v. Bauman*, 571 U.S. 117, 137 (2014).

By its own allegations, Ballad Health concedes that UHG is incorporated in Delaware and headquartered in Minnesota, not Tennessee. Compl. ¶¶ 17–18. There is no general jurisdiction over UHG in Tennessee.

### 2. UHG is not subject to specific jurisdiction in Tennessee.

There are also no plausible factual allegations showing that UHG is subject to specific jurisdiction in Tennessee. "For a State to exercise jurisdiction consistent with due process, the defendant's suit-related conduct must create a substantial connection with the forum State." *Walden*, 571 U.S. at 284. Absent "such connection, specific jurisdiction is lacking regardless of the extent of a defendant's unconnected activities in the State." *Bristol-Myers Squibb Co. v. Superior Ct.*, 582 U.S. 255, 264 (2017). "Even regularly occurring sales of a product in a State do not justify the exercise of jurisdiction over a claim unrelated to those sales." *Goodyear*, 564 U.S. at 930 n.6. A "connection" must exist "between the forum and the specific *claims* at issue." *Canaday v. Anthem Cos.*, 9 F.4th 392, 400 (6th Cir. 2021) (cleaned up and collecting cases).

There is no factual allegation in the Complaint specifying the basis for specific jurisdiction over UHG. In conclusory fashion, Ballad Health lumps UHG in with UHIC and alleges that

---

analysis.

"Defendants conduct substantial business activities within this judicial district, including advertising its products, contracting with healthcare providers, maintaining Medicare Advantage plan networks, and serving plan members residing in this district." Compl. ¶ 29. Putting aside that the allegation is implausible against UHG—which is a holding company that does not offer plans or have members in Tennessee or any other State[4]—alleging that a large company does business in Tennessee does not establish any "connection between the forum and the specific *claims* at issue." *Canaday*, 9 F.4th at 400.

### B. The Court should also dismiss UHG because it is named only in its capacity as UHIC's parent.

The Court should also dismiss UHG because Ballad Health named it only as UHIC's parent company. Ballad Health alleges that UHIC "falls within the control of UnitedHealthcare, Inc. which is the health insurance division and primary brand of UHG" (Compl. ¶¶ 17–18) and that UHG is liable for actions Ballad Health alleges UHIC took. *See id.* ¶¶ 1, 9. But "[i]t is a general principle of corporate law deeply ingrained in our economic and legal systems that a parent corporation . . . is not liable for the acts of its subsidiaries." *United States v. Bestfoods*, 524 U.S. 51, 61 (1998) (cleaned up). And Ballad Health has not even tried to allege facts—never mind alleged facts—suggesting that UHIC is UHG's alter ego. *See, e.g.*, *Gordon v. Greenview Hosp., Inc.*, 300 S.W.3d 635, 652 (Tenn. 2009) (citing *Bestfoods* and collecting cases on alter ego under Tennessee law). For that independent reason, the Court should dismiss UHG. *See, e.g.*, *In re EpiPen Direct Purchaser Litig.*, No. 20-cv-0827, 2022 WL 1017770, at *12 (D. Minn. Apr. 5, 2022) (dismissing claim against UHG because "Plaintiffs' new allegations are little more than 'threadbare recitals' of terms that courts use when determining whether a corporate parent is liable

---

[4]  *See* UNITEDHEALTH GROUP INCORPORATED, FISCAL YEAR 2024 10-K 20 (2025), https://www.unitedhealthgroup.com/content/dam/UHG/PDF/investors/2024/UNH-Q4-2024-Form-10-K.pdf.

for the acts of its subsidiary").

### III. THE MEDICARE ACT PREEMPTS BALLAD HEALTH'S CLAIMS.

If you cut away the irrelevant media clippings, all that remains is Ballad Health's threadbare complaint that UHIC has improperly handled coverage determinations and reimbursements for services provided under Medicare Advantage (Medicare Part C). *See*, *e.g.*, Compl. ¶¶ 1, 27, 33, 34, 37, 53, 54, 84, 94, 105, 107, 112, 113, 116, 119, 123, 126, 127, 129, 131, 137, 138, 139. Based on those scattered—and frankly hard-to-follow—allegations, Ballad Health presses various state-law causes of action. But the Medicare Act "supersede[s] any State law or regulation." *Do Sung Uhm v. Humana, Inc.*, 620 F.3d 1134, 1148 (9th Cir. 2010) (cleaned up). That includes Ballad Health's state-law claims.

Federal law is the "supreme Law of the Land." U.S. CONST. ART. VI, cl. 2. "[A]ll conflicting state provisions [are] without effect." *Maryland v. Louisiana*, 451 U.S. 725, 746 (1981). This includes state-law claims that purport to impose additional requirements on Medicare Advantage Organizations like UHIC. The Medicare Act contains a broad preemption provision:

> The standards established under this part . . . shall supersede any State law or regulation (other than State licensing laws or State laws relating to plan solvency) with respect to [Medicare Advantage] plans which are offered by [Medicare Advantage] organizations under this part.

42 U.S.C. § 1395w-26(b)(3); *see also* 42 C.F.R. § 422.402 (similar).

Through that expansive language, "Congress intended to expand the preemption provision beyond those state laws and regulations inconsistent with enumerated standards." *Uhm*, 620 F.3d at 1149–50; *see also Aylward*, 35 F.4th at 678, 681 (Medicare Act preempts any state claim that "parallels, enforces, or supplements the express standards established" by CMS). Consistent with the Medicare Act's broad preemptive scope, courts routinely dismiss all manner of state-law claims that purport to regulate Medicare Advantage plans. *See, e.g.*, *Uhm*, 620 F.3d at 1156 (fraud

and consumer protection); *Williams v. Aetna Better Health of Ohio*, No. 2:23-cv-2985, 2024 WL 3925879, at *3 (S.D. Ohio Aug. 22, 2024) (breach of fiduciary duty); *Williams v. Allegheny County*, No. 2:21-cv-656, 2023 WL 4238892, at *8 (W.D. Pa. June 28, 2023) (breach-of-contract and good-faith-and-fair-dealing); *Phillips v. Kaiser Found. Health Plan, Inc.*, 953 F. Supp. 2d 1078, 1087–90 (N.D. Cal. 2011) (unfair competition); *Roberts v. United Healthcare Servs., Inc.*, 206 Cal. Rptr. 3d 158, 170 (Cal. Ct. App. 2016) (unfair competition, unjust enrichment, and misrepresentation-based claims).

The Medicare Act preempts Ballad Health's claims. Through this litigation, Ballad Health seeks to impose liability on UHIC for alleged actions related to Medicare Advantage services and reimbursements. *See*, *e.g.*, Compl. ¶¶ 1, 27, 33, 34, 37, 53, 54, 84, 94, 105, 107, 112, 113, 119, 126, 127, 129, 131, 137, 138, 139. But UHIC administers Medicare Advantage plans and makes coverage and reimbursement determinations in accordance with CMS regulations. *See*, *e.g.*, 42 U.S.C. § 1395y(a)(1)(A) ("[N]o payment may be made . . . for any expenses incurred for items or services which . . . are not reasonable and necessary for the diagnosis or treatment of illness or injury or to improve the functioning of a malformed body member[.]"); 42 C.F.R §§ 422.100, .101, .102 (medical necessity regulations); 42 C.F.R. §§ 422.578, .582, .590 (appeal timeliness regulations). Indeed, "[t]he Medicare Act, and the regulations promulgated thereunder provide the standards by which Medicare Advantage organizations, like [UHIC], are to evaluate and pay claims for services under a Medicare benefits plan." *Aetna*, 2024 WL 3925879, at *3 (citing 42 U.S.C. § 1395y(a)(1)(A); 42 C.F.R § 422.100; 42 C.F.R § 422.101; 42 C.F.R § 422.102; 42 C.F.R § 423.104). Those standards and requirements govern the very medical-necessity, appeals-timing, and payment issues that Ballad Health raises in its Complaint. Those areas are "directly governed by federal standards," *Uhm*, 620 F.3d at 1158, and Ballad Health's attempt to use state-law claims

improperly "parallels, enforces, or supplements [the] express standards established" by CMS related to Medicare Advantage, *Aylward*, 35 F.4th at 681.

## IV.     THE COMPLAINT ALSO FAILS THE APPLICABLE PLEADING STANDARDS.

Ballad Health's claims also fail the governing pleading standards. Ballad Health did not plead facts supporting the elements of its contract-based claims and did not plead fraud with the particularity that Rule 9(b) requires.

### A.     The breach-of-contract claims (Counts II, III, & IV) fail on their face.

In Counts II, III, and IV, Ballad Health alleges that UHIC breached the Agreements in various ways. But all that Ballad Health offers are labels and conclusions. There are no factual allegations validating the claims.

Take Count II, for instance. Ballad Health asserts in summary fashion that UHIC breached its obligation under the Agreements not to "engag[e] in arbitrary, capricious, or excessive denials of medical necessity" because UHIC supposedly failed "to make medical necessity determinations with applicable medical standards, Medicare guidelines, and reasonable medical judgment." Compl. ¶ 113–14. But the Complaint is devoid of factual detail related to those alleged denials. Instead, all Ballad Health alleges is that UHIC denied three patients' claims in June 2025. Compl. ¶ 100. But after describing three patients' symptoms and diagnoses, the Complaint omits any detail related to the allegedly problematic denials. Which claims were denied? Why? Were the patients members of a Medicare Advantage plan? Which one? The Complaint doesn't say. Conclusory allegations about alleged "excessive denials" are not enough. *See Iqbal*, 556 U.S. at 678.

Count III, which raises the specter of delayed appeals, is more of the same. In the body of the Complaint, Ballad Health never even hints at allegations that UHIC did not process Ballad Health's appeals in a timely manner. It mentions appeal timing for its claims for the first time in Count III. *Compare* Compl. ¶¶ 101–18 (no factual allegations about untimely processing Ballad

14

Health's claims), *with id.* ¶¶ 119–25 (Count III making conclusory allegations about untimely processing). Even then, Ballad Health offers only conclusory allegations that it "submitted numerous appeals of improperly denied claims" and "performed all conditions precedent to United's obligation to respond to appeals in a timely manner." *Id.* ¶¶ 119–25. Those "threadbare recitals of the elements of a cause of action, supported by mere conclusory statements" fail to state a plausible claim for relief. *Iqbal,* 556 U.S. at 678.

Count IV—which addresses the supposed nonpayment of bed-day fees—suffers from the same flaws. It pairs boilerplate breach-of-contract elements with conclusory allegations ("Ballad . . . performed all conditions precedent" while "United has materially breached") without pleading any facts backing up the conclusions. Compl. ¶¶ 126–30. Ballad Health never alleges, for instance, how many bed days supposedly were not paid or for which patients—let alone attempts to explain why those bed days were medically necessary.

### B. Count VI should be dismissed because Tennessee does not recognize an independent cause of action for breach of the implied covenant of good faith and fair dealing.

Under Tennessee law, a "claim based on the implied covenant of good faith and fair dealing is not a standalone claim; rather, it is part of an overall breach of contract claim." *Haley v. Bank of Am., N.A.*, 2019 WL 13159817, at *8 (E.D. Tenn. July 10, 2019) (cleaned up) (quoting *Cadence Bank, N.A. v. Alpha Tr.*, 473 S.W.3d 756, 773 (Tenn. Ct. App. 2015) (dismissing claim for breach of implied covenant of good faith and fair dealing)). An implied-covenant claim fails when it "seeks to assert a standalone claim for breach of the covenant of good faith and fair dealing independent of [the] breach-of-contract claim." *Id.* (cleaned up). That is true here, so the implied-covenant claim must be dismissed.

15

### C. Count V fails because Ballad Health has not pleaded fraud with 9(b) particularity.

Under Rule 9(b), a plaintiff "alleging fraud . . . must state with particularity the circumstances constituting fraud." Fed. R. Civ. P. 9(b). The complaint "must specify the 'who, what, when, where, and how' of the alleged fraud." *Greer*, 114 F.4th at 614 (quoting *Sanderson v. HCA*, 447 F.3d 873, 877 (6th Cir. 2006)). And it "must (1) specify the statements that the plaintiff contends were fraudulent, (2) identify the speaker, (3) state where and when the statements were made, and (4) explain why the statements were fraudulent." *Id.* at 614–15 (cleaned up).

There are no particularized factual allegations like that supporting Ballad Health's fraud claim (Count V). Instead, Ballad Health alleges generically that "United knowingly and intentionally misrepresented to CMS, the State of Tennessee, and participating hospitals that it would administer its plan in compliance with federal law, including requirements to provide coverage for medically necessary care." Compl. ¶ 139. Ballad Health doesn't identify the who, what, when, where, or how of the alleged fraud. *See Greer*, 114 F.4th at 614; *see also Cataldo v. United States Steel Corp.*, 676 F.3d 542, 551 (6th Cir. 2012) (affirming dismissal of fraud-based claim for lack of particularized pleading when allegations only referred to "defendants" en masse). Because Ballad's complaint fails to "provide the factual predicates necessary to convince [the court] that the underlying fraud in all likelihood occurred," it should be dismissed.

## CONCLUSION

Ballad Health's Complaint generated press, so Ballad Health has already gotten what it sought by flouting the parties' arbitration agreements to file this lawsuit. This Court should dismiss the Complaint in favor of arbitration.

16

Dated: December 4, 2025

Respectfully submitted,

*s/ John E. Winters*
John E. Winters (BPR # 016345)
**KRAMER RAYSON, LLP**
PO Box 629
Knoxville, TN 37901-0629
(865) 524-5134
jwinters@kramer-rayson.com

Brian D. Boone (pro hac vice pending)
**ALSTON & BIRD LLP**
Vantage South End
1120 South Tryon Street, Suite 300
Charlotte, NC 28203
(704) 444-1000
brian.boone@alston.com

Esmat Hanano (pro hac vice pending)
**ALSTON & BIRD LLP**
One Atlantic Center
1201 W Peachtree St NW, Suite 4900
Atlanta, GA 30309
(404) 881-7000
esmat.hanano@alston.com

*Counsel for Defendants UnitedHealth*
*Group Incorporated & UnitedHealthcare*
*Insurance Company*

17

## **CERTIFICATE OF CONFERRAL**

The parties have conferred and disagree as to whether the deficiencies in the complaint could be cured by amendment.

*s/ John E. Winters*
John E. Winters

## **CERTIFICATE OF SERVICE**

On this 4th day of December, 2025, I electronically filed the foregoing with the Clerk of the Court using the CM/ECF system which serves a true and correct copy of the same to all attorneys.

*s/ John E. Winters*
John E. Winters