UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF TENNESSEE
GREENEVILLE DIVISION

| | | |
|---|---|---|
| BALLAD HEALTH, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>UNITEDHEALTH GROUP INCORPORATED, et al.,<br><br>Defendants. | )<br>)<br>)<br>)<br>)<br>)<br>)<br>)<br>) | 2:25-CV-00176-DCLC-CRW |

**MEMORANDUM OPINION AND ORDER**

Ballad Health operates nineteen hospitals across Northeast Tennessee and Southwest Virginia.[1] United insures many of the patients those hospitals treat. Before the 2018 merger that created Ballad Health, each of its two predecessors signed a "Facility Participation Agreement" with United. These agreements required the parties to resolve "any and all disputes" between them through binding arbitration. Ballad Health now alleges that United has spent years denying valid claims, delaying payment, and manipulating the Medicare Advantage Program at the expense of patients, providers, and taxpayers. Those are serious allegations. But the seriousness of those claims does not change the parties' prior agreements about how to resolve those claims. Ballad Health promised to bring them to an arbitrator, and it identifies no rule of Tennessee law that permits the Court to release it from that promise. United's Motion to Compel Arbitration [Doc. 24] is **GRANTED**.

---

[1] Plaintiffs are Ballad Health, Mountain States Health Alliance, Wellmont Health System, Takoma Regional Hospital, Inc., Wellmont Hawkins County Memorial Hospital, Inc., Dickenson Community Hospital, Inc., Johnston Memorial Hospital, Inc., and Smyth County Community Hospital. The Court refers to them collectively as "Ballad Health." Defendants are UnitedHealth Group Incorporated and its subsidiary United HealthCare Insurance Company, referred to collectively as "United."

## I. BACKGROUND

Ballad Health operates nineteen hospitals in Northeast Tennessee and Southwest Virginia. Approximately 70% of Ballad Health's patients receive their healthcare coverage through Medicare or Medicaid, and of Ballad Health's Medicare patients, 72% are enrolled in Medicare Advantage plans. Insurance companies, such as United, provide Medicare Advantage insurance plans and contracts with healthcare providers like Ballad Health for medical services for their insureds.

Ballad Health was formed in 2018 through the merger of Mountain States Health Alliance and Wellmont Health System. [Doc. 1, ¶ 3]. Before the merger, Mountain States Health Alliance and Wellmont Health System each entered into a Facility Participation Agreement with United HealthCare Insurance Company, which in both agreements contracted on behalf of itself and the other entities that are United's Affiliates. [Docs. 26-1, pg. 1; 26-2, pg. 1]. Under the agreements, United agreed to pay the facilities for providing covered medical services to patients.

Both agreements between the parties included an arbitration provision, which provides in relevant part

> The parties will work together in good faith to resolve any and all disputes between them (hereinafter referred to as "Disputes") including but not limited to all questions of arbitrability, the existence, validity, scope or termination of the Agreement or any term thereof.
>
> If the parties are unable to resolve any such Dispute within 60 days following the date one party sent written notice of the Dispute to the other party, and if either party wishes to pursue the Dispute, it shall thereafter be submitted to binding arbitration before a panel of three arbitrators in accordance with the Commercial Dispute Procedures of the American Arbitration Association …
>
> The decision of the arbitrator(s) on the points in dispute will be binding, and judgment on the award may be entered in any court having jurisdiction thereof. The parties acknowledge that because this Agreement affects interstate commerce the

> Federal Arbitration Act applies.
>
> In the event that any portion of this Article or any part of this Agreement is deemed to be unlawful, invalid or unenforceable, such unlawfulness, invalidity or unenforceability shall not serve to invalidate any other part of this Article or Agreement. …
>
> In the event a party wishes to terminate this Agreement based on an assertion of uncured material breach, and the other party disputes whether grounds for such termination exist, the matter will be resolved through arbitration under this Article VII. While such arbitration remains pending, the termination for breach will not take effect.
>
> This Article VII governs any dispute between the parties arising before or after execution of this Agreement, and shall survive any termination of this Agreement.

[Doc. 26-1, pgs. 10-11].[2]

Ballad Health alleges that United has breached these agreements by "engag[ing] in a pattern and practice of improperly denying claims, delaying payments, and failing to comply with its payment obligations under both agreements." [Doc. 31, pg. 9]. It further alleges that United engaged in three schemes "to systematically abuse[] and manipulate[] the Medicare Advantage Program for its direct economic benefit and to the detriment of patients, healthcare providers, and the American taxpayer": (1) systemic upcoding; (2) using Optum Health to circumvent the medical loss ratio requirements from the Affordable Care Act; and (3) systemically delaying and underpaying medical providers, like Ballad Health. [Doc. 1, ¶ 31]. United now moves to compel arbitration, contending that the arbitration clauses in the Facility Participation Agreements require that this dispute proceed to binding arbitration.

## II. LEGAL STANDARD

The Federal Arbitration Act governs whether Ballad Health's claims belong in arbitration.

---

[2] The provided language is from the Mountain States Health Alliance agreement. The arbitration clause in the Wellmont Health System agreement is substantially similar, with only minor differences that do not impact the Court's analysis. [*See* Doc. 26-2, pg. 30].

The Act provides that a written agreement to arbitrate a dispute arising out of a contract "valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. It places arbitration agreements "on equal footing with all other contracts." *Seawright v. Am. Gen. Fin. Servs., Inc.*, 507 F.3d 967, 972 (6th Cir. 2007) (internal quotation marks and citation omitted). When a valid agreement reaches the dispute before it, the Court must order the parties to arbitrate. 9 U.S.C. § 4.

In addressing a motion to compel arbitration, the Court first asks whether the parties agreed to arbitrate and second whether the dispute actually falls within the scope of their agreement. *Mazera v. Varsity Ford Management Services, LLC*, 565 F.3d 997, 1001 (6th Cir. 2009) (quoting *Landis v. Pinnacle Eye Care, LLC*, 537 F.3d 559, 561 (6th Cir. 2008)); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000). "[A]ny ambiguities in the contract or doubts as to the parties' intentions should be resolved in favor of arbitration." *Id*.

The Sixth Circuit treats a motion to compel arbitration like a motion for summary judgment. *Great Earth Cos. v. Simons*, 288 F.3d 878, 889 (6th Cir. 2002). The party opposing arbitration therefore bears the burden of showing a genuine issue of material fact as to the validity of the agreement to arbitrate. *Id*. The Court views all facts and the inferences drawn from them in the light most favorable to that party and asks whether a reasonable finder of fact could conclude that no valid agreement to arbitrate exists. *Id*.

If the motion succeeds, the next issue is whether to stay this action or to dismiss it. Section 3 of the Act provides that the Court "shall on application of one of the parties stay the trial of the action" until arbitration has concluded. 9 U.S.C. § 3. That command is mandatory. When a party applies for a stay, the Court must grant one and may not dismiss the case. *Smith v. Spizzirri*, 601 U.S. 472, 475–76 (2024); *Arabian Motors Grp. W.L.L. v. Ford Motor Co.*, 19 F.4th 938, 941–42

(6th Cir. 2021). But staying the case turns on a request by the parties. None was made here, and the Sixth Circuit has left open what a court may do when no party makes one, identifying "a situation in which neither party asks for a stay" as one in which "a dismissal remains permissible." *Arabian Motors*, 19 F.4th at 942.

## III. ANALYSIS

United asserts that Ballad Health's claims must be resolved by arbitration due to their contractual agreements to resolve "any and all disputes" by binding arbitration. [Docs. 26-1, pg. 10; 26-2, pg. 30]. In response, Ballad Health asserts that the arbitration clause is void as against public policy because the dispute concerns a matter of important public concern, namely, the operation of the publicly funded Medicare Advantage Program. Additionally, Ballad Health asserts that the arbitration clause is unenforceable due to United's material breach of the underlying agreements. The Court will address each of Ballad Health's arguments in turn.

### A. Public Policy

To begin, it is well established that the FAA reflects "an emphatic federal policy in favor of arbitral dispute resolution." *KPMG LLP v. Cocchi,* 565 U.S. 18, 21 (2011) (quoting *Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc.,* 473 U.S. 614, 631 (1985)); *see also Stout v. J.D. Byrider*, 228 F.3d 709, 714 (6th Cir. 2000) ("Courts are to examine the language of the [Arbitration Agreement] in light of the strong federal policy in favor of arbitration."). The FAA provides that a written agreement to arbitrate disputes arising out of an existing contract "shall be valid, irrevocable, and enforceable, save upon such grounds as exist at law or in equity for the revocation of any contract." 9 U.S.C. § 2. By its terms, the FAA "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." *Cocchi*, 565 U.S. at

22 (quoting *Dean Witter Reynolds Inc. v. Byrd*, 470 U.S. 213, 218 (1985)). Thus, courts are required to compel arbitration if a valid agreement to arbitrate exists and the dispute falls within the substantive scope of that agreement. State law governs this analysis.[3] *Howell v. Rivergate Toyota, Inc.*, 144 F. App'x 475, 477 (6th Cir. 2005).

Under Tennessee law,[4] courts are instructed to carry out the terms bargained for in a contract unless those terms violate public policy. *Vintage Health Res., Inc. v. Guiangan*, 309 S.W.3d 448, 464-65 (Tenn. Ct. App. 2009) (citing *Guiliano v. Cleo, Inc.,* 995 S.W.2d 88, 100 (Tenn. 1999)). This authority to invalidate a contract due to public policy must be exercised with restraint, however, in recognition of the competing public interests of the parties' freedom to contract, autonomy to order their own affairs, and the need to bind parties to their voluntary agreements. *See Baugh v. Novak*, 340 S.W.3d 372, 382, 384 (Tenn. 2011) ("In circumstances where public policy imposes limitations on the freedom of contract, Tennessee's courts are well-advised to wield a scalpel rather than a sledgehammer. We must, if possible, interpret contracts in a way that upholds their validity."). Additionally, as is the case federally, Tennessee public policy strongly favors arbitration. *See Rosenberg v. BlueCross BlueShield of Tennessee, Inc.*, 219 S.W.3d

---

[3] The Sixth Circuit has recognized, however, that even when applying state-law principles of contract interpretation, "due regard must be given to the federal policy favoring arbitration, and ambiguities as to the scope of the arbitration clause itself resolved in favor of arbitration." *Bratt Enters., Inc. v. Noble Int'l Ltd.*, 338 F.3d 609, 613 (6th Cir. 2003) (citation and quotation omitted).

[4] Ballad Health asserts that Tennessee law governs this dispute, and United does not contest that issue. The two agreements each provide that they "will be governed by and construed in accordance with the laws of the state in which Facility renders Covered Services, and any other applicable law." [Docs. 26-1, pg. 13; 26-2, pg. 23]. Although Ballad Health owns facilities both in Tennessee and Virginia, the parties do not identify any conflict between Virginia law and Tennessee law, and each focuses its analysis on Tennessee law. Accordingly, the Court likewise will apply Tennessee law to this case. Additionally, as Ballad Health notes, the parties entered into the agreements in Tennessee, and Tennessee follows the rule of *lex loci contractus*, which provides that a contract is presumed to be governed by the law of the jurisdiction in which it was executed, absent contrary intent. *Williams v. Smith*, 465 S.W.3d 150, 154 (Tenn. Ct. App. 2014).

892, 913 (Tenn. Ct. App. 2006) ("A party challenging the arbitration provisions of a contract … faces a figurative tsunami of case law, both federal and state, ever strengthening and reenforcing the favored status of arbitration."). Based upon these principles, the Tennessee Supreme Court "has often held that public policy is best served by freedom of contract." *Baugh*, 340 S.W.3d at 383 (citation and quotations omitted) (noting that Tennessee statutory and case law recognizes "a strong public policy" supporting freedom of contract).

To determine whether a contract is void as violating public policy, courts must consider "the situation of the parties at the time the contract was made and the purpose of the contract." *Hoyt v. Hoyt,* 372 S.W.2d 300, 303 (Tenn. 1963). Courts will decline to enforce a contract on the ground of public policy only "(1) when the violation of public policy is clearly established, (2) when the violation is inherent in the contract itself, not collateral thereto, or when the contract's purpose taints it with illegality, and (3) when a clear public detriment will probably occur as a result of the contract or where the object of the contract tends to injure the public." *Baugh*, 340 S.W.3d at 383–84. In assessing Tennessee's public policy position on a certain area, "courts look to the Constitution of Tennessee, the statutes enacted by the General Assembly, the common law, and prior court decisions." *Id.*

Ballad Health argues that public policy "strongly favors transparency in healthcare insurance practices, particularly those involving Medicare Advantage plans that serve vulnerable populations and are funded by taxpayer dollars." [Doc. 1, ¶ 108]. And it contends that an arbitration provision may be void as against public policy when the underlying contractual dispute concerns a matter of important governmental policy or State interest. [Doc. 31, pg. 13]. To be sure, those are valid concerns implicating a strong public interest, especially in the context involving the public health of those in Northeast Tennessee. But Ballad Health has not identified

any provision of Tennessee law that supports that public policy concern. Instead, Ballad Health cites to two cases interpreting New York law, and two cases interpreting California law. [Doc. 31, pgs. 8-9 (citing *Bd. of Educ., Hunter-Tannersville Cent. Sch. Dist. v. McGinnis*, 475 N.Y.S.2d 512 (N.Y. App. Div. 1984); *Bd. of Ed., Great Neck Union Free Sch. Dist. v. Areman*, 41 N.Y.2d 527, 528, 362 N.E.2d 943 (1977); *Beynon v. Garden Grove Med. Grp.*, 100 Cal.App.3d 698, 712 (Ct. App. 1980); *Breazeale v. Victim Servs., Inc.*, 198 F.Supp. 3d 1070, 1081 (N.D. Cal. 2016), *aff'd*, 878 F.3d 759 (9th Cir. 2017))].[5] And Ballad Health does not argue that Tennessee courts have adopted the reasoning of these cases when interpreting Tennessee public policy.

Ballad Health has not established that the asserted public policy violation here is "inherent in the contract itself," rather than collateral thereto. *Baugh*, 340 S.W.3d at 384. This factor focuses on the illegality inherent in the contract itself. *Id.* There is no argument that a provision to arbitrate between these sophisticated parties is inherently illegal.

Ballad Health argues that enforcing this arbitration agreement would harm the public good.

---

[5] Moreover, Ballad Health's cited cases concern substantially different situations that implicate different public policy concerns than are relevant here. *McGinnis* addresses whether a teachers' association must be bound by its agreement to arbitrate claims against the local public school district. 475 N.Y.S.2d at 513. The Appellate Division of the Supreme Court held that it must. *Id.* at 516. *Areman* similarly involved a teachers' association's dispute with a public school district. 41 N.Y.2d at 531. But disputes between public school districts and their state-funded teachers are far afield from the instant dispute between private healthcare entities, even where public healthcare funding is involved. *Breazeale* is equally dissimilar. The federal court in California invalidated an arbitration agreement on public policy grounds in a contractual dispute between a prosecutor and a criminal suspect, in part because the FAA is not intended to govern disputes between the government in its law enforcement capacity and citizens, and because of the special role of courts in overseeing governmental functions like prosecutions. *Breazeale*, 198 F. Supp. 3d at 1077, 1080.

The most similar of Ballad Health's cited cases to the instant case is *Beynon*, where the California Court of Appeal held that a dispute between a healthcare provider and patient was nonarbitrable. 100 Cal.App.3d 698. But in that case, the court pointed to specific provisions of California state law that the contract violated. *Id.* at 710-12. Ballad Health does not claim that Tennessee has similar laws, and the Court cannot apply California laws to this dispute. In sum, none of Ballad Health's cited cases bear any factual or legal relevance to this case.

[Doc. 31, pg. 7]. It argues that the nature of the dispute concerns United's "systemic" abuse of the Medicare Advantage Program, a program that receives "enormous amounts of public funding…." [*Id.* at 9]. It notes that enforcement of its arbitration agreement would limit regulatory oversight and run counter to CMS's regulatory goal of maintaining "transparency" in the program. *Id.* But Ballad Health fails to explain how enforcing the arbitration agreement would limit CMS's ability to oversee the Medicare Advantage Program. CMS's ability to regulate payments under this program or its mission to ensure compliance by healthcare insurers and providers is not impacted at all by this arbitration agreement between Ballad Health and United.

Accordingly, Ballad Health has failed to establish a genuine issue of material fact as to the validity of the arbitration agreements. With no basis to find that they are violative as against public policy, they must be upheld, particularly in light of the overwhelming federal and state policies in favor of arbitration.

**B. Breach of Contract**

Ballad Health also argues that because United breached the agreements, Ballad should be "excused from further performance" under the contracts, including its obligation to arbitrate this dispute. [Doc. 31, pg. 17]. But it is well-established that a claim that one party breached the underlying contract generally does not negate the applicability of an arbitration provision. *See Local Union No. 721, United Packinghouse, Food and Allied Workers, AFL-CIO v. Needham Packing Co.*, 376 U.S. 247, 251–52 (1964) ("Arbitration provisions, which themselves have not been repudiated, are meant to survive breaches of contract, in many contexts, even total breach[.]"); *see also Merritt v. Square Cap., LLC*, No. 2:24-CV-2196-TLP-ATC, 2024 WL 4183316, at *6 (W.D. Tenn. July 25, 2024) (A breach of contract claim "does not preclude applicability of the arbitration provision, however, as 'breach of the substantive contract is not a

permitted objection to arbitrability; it is a merits question.'" (quoting *Sleeper Farms v. Agway, Inc.*, 506 F.3d 98, 104 (1st Cir. 2007))). Ballad Health's claims that United breached the agreements go to the merits of the case and are therefore subject to the arbitration clauses.

Moreover, the arbitration provisions of the agreements here are severable from the remainder of the contracts. Each agreement provides that if "a party wishes to terminate this Agreement based on an assertion of uncured material breach, and the other party disputes whether grounds for such a termination exist, the matter will be resolved through arbitration" and that while the arbitration remains pending, "the termination for breach will not take effect." [Docs. 26-1, pg. 11; 26-2, pg. 21]. The Supreme Court has established that unless a party challenges the validity of the arbitration clause itself, "the issue of the contract's validity is considered by the arbitrator in the first instance." *Buckeye Check Cashing, Inc. v. Cardegna*, 546 U.S. 440, 445-46 (2006) (also holding that, "as a matter of substantive federal arbitration law, an arbitration provision is severable from the remainder of the contract."). Because Ballad Health challenges the validity of the agreements as a whole due to United's alleged breach, rather than the arbitration clauses themselves, those clauses are enforceable apart from the remainder of the agreements. *See id.* at 446. This argument may only be considered by an arbitrator, not a court.

## IV. CONCLUSION

Ballad Health has not met its burden of showing a genuine issue of material fact as to the validity of the arbitration agreements. The arbitration agreements are valid. Ballad Health does not otherwise claim that its dispute falls outside the scope of the arbitration agreement. [Doc. 31, pg. 16 ("scope of the arbitration provision … is not at issue here.")]. Accordingly, United motion to compel arbitration [Doc. 24] is **GRANTED.** Because this dispute must be arbitrated, the Court

does not reach the issues raised by United concerning personal jurisdiction, preemption by the Medicare Act, or pleading defects.

The next question is disposition of this case. Section 3 requires the Court to stay this case if a party applies for a stay. 9 U.S.C. § 3, *Spizzirri*, 601 U.S. at 475-76. Neither party has done so. United asks this Court to dismiss this case [Doc. 26, pg. 16], and Ballad Health, while opposing arbitration, has not asked this Court to stay the case while the case is being arbitrated. Because neither party requested a stay, dismissal remains available. *Arabian Motors Grp., W.L.L.*, 19 F.4th at 942. Because every claim in the complaint must be arbitrated, the Court sees no purpose in keeping this case open. Accordingly, this case is **DISMISSED WITHOUT PREJUDICE**.

A separate judgment shall enter.

**SO ORDERED:**

s/ Clifton L. Corker
United States District Judge